FILED IN CLERK'S OFFICE
U.S.D.C. – Rome

DEC 29 2022

KEVIN P. WEIMER, Clerk
By: ___ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| JESSE REGALADO, | ) | |
| | ) | |
| Plaintiff (pro se), | ) | CIVIL ACTION NO. **4:22-CV-0277** |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | INJUNCTION RELIEF |
| TOWN OF TRION | ) | DEMAND FOR JURY TRIAL |
| CITY OF SUMMERVILLE | ) | |
| CHATTOOGA COUNTY | ) | |
| | ) | |
| Defendants, | ) | |

---

## COMPLAINT, INJUNCTION RELIEF, DEMAND FOR JURY TRIAL, AND MEMORANDUM OF LAW

### I.    COMPLAINT

The Plaintiff, Jesse Regalado, brings this civil action against the above-listed

Defendants for injunctive relief and alleges as follows:

### II.    INTRODUCTION

1.    **THIS MATTER** is before the Court on behalf of Plaintiff Jesse

Regalado's complaint for injunction relief against Defendants Town of Trion,

Chattooga County, and City of Summerville, on the following:

2.    This is a 42 U.S. Code § 1983 federal civil rights case under the Fifth,

Fourth Amendment, and Fourteenth Amendments of the U.S. Constitution as

applied to the States for the Defendants' individual and collective unlawful violations under color of state law against Plaintiff's constitutional rights and state tort claims for civil conspiracy.

3.    Defendants committed these unlawful violations against Plaintiff with disregard to Plaintiff's constitutional, state rights and Plaintiff's property rights by:

4.    Violation of the taking clause- (enforcing an eminent domain and taking the plaintiff's plans for a Micro-hospital/Emergency 24-hour Care Facility without compensation)

5.    Violation of the 5th Amendment – (enforcing an eminent domain and taking the plaintiff's personal property without compensation, which requires the government to compensate citizens when it takes private property for public use)

6.    Violation of the 14th Amendment- No State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws; by enforcing an eminent domain without compensation)

7.    Violation of the 4th Amendment illegal search and seizure of property by government officials enforcing an eminent domain and taking the plaintiff's personal property without compensation)

2

8.    Violation of the Defend Trade Secrets Act of 2016 (D.T.S.A.)- by illegally disclosing the plaintiff's trade secrets without the plaintiff's permission

9.    Violation of the Uniform Trade Secrets Act by illegally disclosing the plaintiff's trade secrets without the plaintiff's permission

10.    Violation of copyright infringement by taking possession of the plaintiff's copyrighted property "as if [it] held full title and ownership of the plans" without compensating the Plaintiff

11.    Violation of O.C.G.A. 9-3-24 ORAL CONTRACT- by refusing to enforce an oral contract

12.    Violation of General Character of truthfulness O.C.G.A. § 24-6-608 by violating O.C.G.A. 9-3-24, violating the 5th , 4th, and 14th Amendments

13.    Violation of Georgia Code of Ethics for Government Service O.C.G.A. § 45-10-1, Sec II,  by violating O.C.G.A. 9-3-24, violating the 5th, $4^{th,}$ and 14th Amendments of U.S. constitution

### III.    JURISDICTION AND VENUE

14.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violations of civil rights under the Fifth, Fourth, and Fourteenth Amendments to the United States Constitution.

15. This Court has subject-matter jurisdiction over this matter pursuant to 28

    U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights);

    28 U.S.C. § 1367 provides supplemental jurisdiction over the state law

    tort claims that arose from the same common nuclei of facts.

16. This Court has subject-matter jurisdiction over this matter pursuant to 28

    U.S.C. §1361(Action to compel an officer); 28 U.S.C. §1358 (eminent

    domain)

17. This Court has subject-matter jurisdiction over this matter pursuant to 17

    U.S.C. § 102 (property rights).

18. Venue is proper in this judicial district and division pursuant to 28 U.S.C.

    § 1391(b) and N.D. GA. Loc. R. 3.1(b)(1)(a). Defendants' primary

    employment is in this district and division, and Defendants' collective and

    independent unlawful acts of malice and violations under color of state

    law against the Plaintiff's constitutional rights which give rise to the

    claims herein accrued within this judicial district and division.

19. These constitutional law violations are "capable of repetition, yet evading

    review." Roe v. Wade, 410 U.S. 113, 125 (1973) (citing Southern Pacific

    Terminal Co. v. ICC, Case 6:15-cv-00785-GAP-TBS 219 U. S. 498, 515

    (1911), United States v. W. T. Grant Co., 345 U. S. 629, 632-633 (1953),

Carroll v. Princess Anne, 393 U. S. 175, 178-179 (1968), Moore v.

Ogilvie, 394 U. S. 814, 816 (1969).

## IV.   BACKGROUND

20.     The Plaintiff moved to the City of Trion on 09/01/2020,  because the

town was very similar to Porterdale, GA, where  Plaintiff lived for two years. Trion

and Porterdale are mill towns, and both towns declined (population/wealth) due to

offshore outsourcing of cotton to Asian countries.

21.     The Plaintiff did a case study as part of the plaintiff's capstone

coursework at Georgia State University (Instructional Design and

Technology/Human Performance). Plaintiff analyzed archival records (job growth,

the potential for job growth, and what could be used to attract businesses to the

City of Porterdale).   Plaintiff noticed people came from miles, even other states, to

kayak in the yellow river, located in Porterdale, Georgia. Plaintiff also saw that the

town was surrounded by significant Universities (Georgia State University

Covington Campus, Emory University at Oxford, Mercer University in

McDonough, and other technical Colleges). The Plaintiff proposed a concert series

event incorporating the yellow river and kayaking. Plaintiff proposed prioritizing

local businesses to cater to the event. The Plaintiff was going to promote the event,

film the event, and coordinate the social media posts for the event (pre/during/post) to promote the events, as well as conduct surveys for improvements.

22.    The Plaintiff got with Josephine Kelly, the Downtown Development Director, Bob Thomas the City Manager, and Arline Chapman the City mayor of the City of Porterdale, GA (*See*, Exhibit 1). The Plaintiff was scheduled to begin working on the concert series event, but the GBI investigated the City Manager for mismanaging over one million dollars, and he resigned from his position on 08/05/2019 (*See*, Exhibit 2).

23.    Once the City manager resigned, Plaintiff graduated with a master's degree and sought out a City with similar demographics to propose his concert series event. The Plaintiff looked at Manchester, Ga, Elberton, GA, and Trion, GA. The Plaintiff sold his home in August 2020 and bought a house in Trion, Georgia.

24.    The house the Plaintiff bought was in desperate need of remodeling. It took Plaintiff about nine months to complete the construction and the landscape architectural design. On June 30, 2021, Plaintiff reached out to the mayor of the City of Trion, Mr. Stansell. Plaintiff emailed him the proposal. Plaintiff asked the mayor if he could talk to him about the concert proposal. The Plaintiff also sent him proof that he was working with Josephine Kelly, the Downtown Development

Director, Bob Thomas, the City Manager, and Arline Chapman, the City mayor of the City of Porterdale, GA (*See*, Exhibit 3, Exhibit 4).

25.    The Plaintiff went to City Hall and spoke with Mr. Stansell about the plaintiff's proposal. Mr. Stansell was agitated that Plaintiff compared Trion, GA, to Porterdale, GA. Although both were once booming mill towns, both collapsed due to offshore outsourcing of cotton to Asian countries, causing the mills to lay off employees and a decline in business growth and population. The Plaintiff left feeling that he could not help the City if the mayor could not see the poverty, the drug addiction, and the despair. The Plaintiff decided to stay in Trion, GA, for three years to obtain the plaintiff's Ph.D., sell his home, and move back to Atlanta.

26.    The Plaintiff started EDUC732: Principles of Human Performance Technology (D01) at Liberty University on June 2021 (*See*, Exhibit 5). The Plaintiff wanted to do a case study on the City of Trion. Plaintiff felt he could use his degree to assist the City, although Plaintiff initially didn't think he could help the City because of the mayor's response to the plaintiff's first proposal. Instead, Plaintiff began to examine archival records of the town of Trion and found out that they had a hospital in the 1960s, but it was shut down due to asbestos, and Plaintiff began to work on a plan to get the City a hospital.

27.     On 04/28/2021, Plaintiff became sick and suffered from flank pain. He could not drive far from the intense pain, so he went to Redmond, a family clinic in Trion. The nurse practitioner became concerned and ordered a C.T. scan for the plaintiff's abdomen/pelvis because she was concerned the pain may be coming from the plaintiff's appendix (*See*, Exhibit 6) since he was a full-time student without insurance Plaintiff did not want to accrue additional costs by riding in an ambulance to the hospital, and since Plaintiff did not know anyone in Trion to pick him up once released from the hospital, Plaintiff chose to drive himself there. The Plaintiff started driving at 45 miles an hour in Trion, 35 miles an hour in Summerville, 55 miles an hour around a mountain, 65 miles an hour somewhere between Summerville and Rome, 55 miles an hour in the outskirts of Rome, to 45 miles an hour in the City limits to Redmond hospital. The pull from the different speeds increased the pain on the plaintiff's flank; putting pressure on the gas pedal with the plaintiff's foot to adjust to different rates and maintain those speeds caused severe pain. When Plaintiff got home, he realized he had messed up big time, the hospital was 27 miles away, driving at varying rates. In Atlanta and Porterdale, the Plaintiff lived 5 minutes from the hospital.

28.     The Plaintiff knew once he began EDUC732: Principles of Human Performance Technology (D01) at Liberty University on June 29, 2021 that

Plaintiff would use this course to work on the hospital idea and obtain guidance from the plaintiff's professor. The plaintiff's professor (Dr. Baer) did not approve the project because the course objective was to do research for a proposed course (*See*, Exhibit 7). Instead, Plaintiff did research and outlined a proposal for a Virtual, Mixed, and Augmented reality course in Flight Simulation and Aviation Safety[1] (*See*, Exhibit 8).

29.     The Plaintiff also began to work on a MICRO-HOSPITAL/24-hour emergency room care facility: 15-30 beds in facilities ranging from 20,000 to 60,000 square feet, certificate of need, and tax break initiatives, on the side (*See*, Exhibit 9). The certificate of need was the hardest to obtain. Still, after archival research on how Dalton and Rome got their certificate of need, Plaintiff found out that Dalton got their certificate of need due to the Spanish flu pandemic. Plaintiff also did a lot of research at Liberty University on the effects of COVID-19 on Rural communities and how rural communities were adversely affected by the lack of healthcare in case, a presentation was needed.

---

[1]*See* Liberty University. Virtual, Mixed and Augmented reality course in Flight Simulation and Aviation Safety (August 8, 2021) https://regaladojesse.wixsite.com/portfolio-9/books-and-literature (last visited December 11, 2022)

30.     On Friday, October 29, 2021, there was a meeting in City Hall in
Trion to meet and greet the candidates for City mayor (which occurred in the
November election). Typed documentation of the City hall meeting on October 29,
2021, will prove Plaintiff's attendance. The Plaintiff was very excited about the
possibility of a hospital, jobs, economic growth, stopping the brain drain, and a
social welfare project to negotiate contracts on behalf of the City. When the
meeting ended, the mayor and Plaintiff went to his office along with his secretary.
Plaintiff explained to him that he had a plan for a hospital. Mr. Stansell became
agitated and began to yell, "You don't understand you need a certificate of need."
So, Plaintiff told him, no, you don't understand the plan I offer, gives you a
guaranteed certificate of need.

31.     Mr. Stansell told the plaintiff that Trion didn't have the land anymore
and that he had been attempting to build a hospital for 20 years.  The plaintiff also
told him the town of Trion could buy the hotel or vacant businesses and build the
hospital there. The plaintiff told him he would email him the plans for the hospital.
Plaintiff told him the hospital he proposed would be self-sufficient (internet, water,
and electricity) without draining the resources from the City. The plaintiff told him
if he didn't want the plans for the hospital, he would take the plans to Summerville.
Plaintiff wanted to help Trion and that Trion, GA was a perfect location, between

Summerville, Villanow, Lafayette, Menlo, and Walnut Grove. So, Plaintiff told

him he would email him the plans (Exhibit 10)

32.    Plaintiff told him he knew there would be a new mayor in January, but

he was concerned that the certificate of need could expire. Mr. Stansell told

Plaintiff he would begin working on it as soon as he gets it and pass it on to the

new mayor. The Plaintiff and Mr. Stansell came under a legally binding verbal

contract (O.C.G.A. 9-3-24 ORAL CONTRACT), where Plaintiff trusted the mayor

of the City of Trion with the trade secrets to the plaintiff's plan for the hospital

(O.C.G.A. § 45-10-1, sec II; O.C.G.A. § 24-6-608).  On Saturday, October 30,

Plaintiff emailed Mr. Stansel the plans for the MICRO-HOSPITALS/24-hour

emergency room care facility. Then, on Monday, November 1, 2021, Plaintiff also

delivered a paper copy to Mr. Stansell, the City mayor of Trion, copyright symbols

protected the plans.

33.    Copyright notice is a statement placed on copies or phonorecords of a

work to inform the public that a copyright owner is claiming ownership of it. A

notice consists of three elements that generally appear as a single continuous

statement:

34.     The copyright symbol © (or for phonorecords, the symbol ℗ ); the

word "copyright"; or the abbreviation "copr."; • The year of first publication of the

work; and • The name of the copyright owner. Example: © 2017 John Doe.

The use of a copyright notice is the copyright owner's responsibility and does not

require permission from, or registration with, the Copyright Office (See[2],

Copyright Notice (Circular 3)).

35.     The copyright notice had to be placed on copies or phonorecords in a

way that was permanently legible to an ordinary user of the work and could not be

concealed from view upon reasonable examination.

36.     The office adopted specific regulations for the placement of notice on

the following types of works: • Literary works • Contributions to collective works •

Musical works • Sound recordings • Dramatic works • Motion pictures and other

audiovisual works • Pictorial, graphic, and sculptural works • Multipart works •

Works published in machine-readable copies (*See*, chapter 2200, section 2207, of

the Compendium[3]) Copyright notice was required for all works first published

---

[2,]*See* Copyright Notice (Circular 3) (n.d.)
https://www.copyright.gov/circs/circ03.pdf. (last visited December 9, 2022
[3,] *See* COMPENDIUM: Chapter 2200 (n.d.)
https://www.copyright.gov/comp3/2017version/redlines/chap2200.pdf (last visited
December 9, 2022)

before March 1, 1989, subject to some exceptions discussed below. If the notice

was omitted or a mistake was made in using copyright notice, the work generally

lost copyright protection in the United States.

37.     Copyright notice is optional for works published on or after March 1,

1989, unpublished works, and foreign works; however, there are legal benefits for

including notice on your work).

38.     The plaintiff's Hospital plan is also protected by the Defend Trade

Secrets Act of 2016 (D.T.S.A.), which amended the Economic Espionage Act.

39.     **TRADE SECRETS / REGULATORY DATA PROTECTION**[4]

Is information that has either actual or potential independent economic value under

not being generally known (the City of Summerville/Chattooga County could not

build a hospital without the hospital plans, which the plaintiff submitted to the

mayor of Trion

40      has value to others who cannot legitimately obtain the information,

(The City of Summerville/Chattooga County and Trion have the potential for

financial gain from acquiring the plaintiff's trade secrets which led to a contract

---

[4]*See* Trade Secret Protection: Everything You Need to Know. UpCounsel. (2022).

https://www.upcounsel.com/trade-secret-protection (last visited December 9,

2022).

with Floyd Medical Center. The town of Summerville/Chattooga County got the
plans for the hospital from the mayor of the City of Trion (Mr. Stansell) without
the plaintiff's permission and was able to obtain a contract with Floyd Medical
Center for a hospital/24 Hour emergency care facility).

41      and is subject to reasonable efforts to maintain its secrecy

The plaintiff made great efforts to keep the plans a secret (between the
mayor of Trion and the plaintiff). No one could see the plans for the hospital or the
certificate of need without access to the google link[5] or the printed papers given to
the mayor of Trion).

39.      The Uniform Trade secrets act does not exclude the government and
governmental subdivisions or agencies from penalties for improper use, or
misappropriation or allow for an eminent domain without compensation.

## B. Uniform Trade Secrets Act

40.      (1) "Improper means" includes theft, bribery, misrepresentation,
breach, or inducement of a breach of duty to maintain secrecy or espionage

---

[5]*See* Client Report Trion, GA (Micro-hospital/Emergency 24-hour Care Facility)
(2021).
https://docs.google.com/presentation/d/1pLJngZzTkW1P01FV6H8SxBJwN3tqypr
Q1vjskQIpRz8 (last visited December 9, 2022).

through electronic or other means.

41.    (2) "Misappropriation " means: (i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (ii) disclosure or use of a trade secret of another without express or implied consent by a person who

42.    (A) used improper means to acquire knowledge of the trade secret; or

43.     (B) at the time of disclosure or use knew or had reason to know that his knowledge of the trade secret was (I) derived from or through a person who has utilized improper means to acquire it; (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

44.    or (C) before a material change of his position, knew, or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

45.    (3) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, or agency, or any other legal or commercial entity.

46.     The plaintiff was in school taking classes and was preoccupied with finals (each course was eight weeks long). Plaintiff took EDUC 734 and 736 in the Fall semester of 2021 (*See*, Exhibit 11). Plaintiff was not worried that the mayor had not contacted him because Mr. Stansell said he would get started on it, and besides, the mayor was a prominent figure bound by the Georgia Code of Ethics for Government Service (O.C.G.A. § 45-10-1, sec II; O.C.G.A. § 24-6-608). Code of Ethics for Government Service established in section 45-10-1 (Ga. L. 1968, p. 1369.) for exhibiting to the public and employees of the state and all governments therein  (Sec. II). Uphold the Constitution, laws, and legal regulations of the United States and the State of Georgia and of all governments therein and never be a party to their evasion.

47.     The elections were held at Trion, GA's recreation center, in November 2021. The plaintiff stopped and spoke with the new mayor (Mr. Thomas) and told him of the plaintiff's plans for the City. Plaintiff told Mr. Thomas that his opposing candidate was perfect for the project he had in mind for the City because he was an architect. But, after meeting with him one time, Plaintiff knew he was not the man for the job. So, Plaintiff told Mr. Thomas, after meeting him and talking with him, that he would win. Mr. Thomas told Plaintiff that he believed he would win as well. The plaintiff told him for this reason he was stopping by to discuss the plan

already in place between Mr. Stansell and the Plaintiff concerning the hospital. He told Plaintiff to give him till March (2022) because he needed time to acclimate to his new position.

48.     On January 20, 2022, Plaintiff emailed Mr. Thomas, the new mayor of Trion, concerned that omicron signified the end of the pandemic. In the email, Plaintiff stressed the importance of acting fast. Plaintiff told him that he feared that omicron would be the end of the pandemic. Plaintiff urged him to submit the certificate of need, acquisition, or buy land (*See*, Exhibit 12) to build the hospital and sent him the link for the plans for the hospital. The plaintiff also stopped by City hall and dropped off a paper copy of the plans for the hospital.

49.     Plaintiff gave the mayor a month to respond to the plaintiff's email. The plaintiff was concerned that the Town of Trion was running out of time to submit a certificate of need for the hospital. Therefore, on February 28, 2022, Plaintiff went to see the mayor of the town of Trion, at City hall. His secretary told Plaintiff that he would not see him because the plans had been passed to the commissioner of Summerville.

50.     The Plaintiff became agitated when his secretary told him that the plans had been passed to the commissioner of Summerville. After the plaintiff's

voiced his distaste, she gave the Plaintiff the address of the commissioner of Summerville (Mr. Elsberry).

51.    Plaintiff was unaware that Mr. Stansell (the former mayor) or Mr. Thomas (the new mayor) had passed the hospital plans to the commissioner of Summerville. This was done without the plaintiff's permission (violating the Defend Trade Secrets Act of 2016 (D.T.S.A.), the Uniform Trade Secrets Act, and the copyright infringement for unpublished works (COMPENDIUM: Chapter 2200, 2202.1).

52.    On February 28, 2022, Plaintiff went to the office of the commissioner of Summerville. Plaintiff told Mr. Elsberry he had been working with the former mayor of Trion and Mr. Thomas the new mayor, and that he had plans for a hospital. Plaintiff told him that he had an oral contract with Mr. Stansell and Mr. Thomas (O.C.G.A. 9-3-24 ORAL CONTRACT)  to start working with them on the Micro-hospital/Emergency 24-hour Care facility.

53.    Mr. Elsberry told the Plaintiff he had plans for a hospital, as well, and that his plan had a helicopter landing pad. Plaintiff told him he submitted a hospital plan with a helicopter landing pad as well, to both the new and former mayor of Trion, along with a certificate of need. He gave Plaintiff his business card and said he would like Plaintiff to email him the hospital plans. Plaintiff sent him the plans

for the hospital, cost, and potential yearly financial gain (*See*, Exhibit 13). The plaintiff was under the impression that he was now working with the commissioner of Summerville, so on February 28, he wrote Mr. Thomas an email attaching it to Mr. Elsberry stating that he now was working with the commissioner (*See*, Exhibit 14). Then, on February 29, 2022, Plaintiff stopped by Mr. Elsberry's office and gave his secretary a physical copy of the plans.

54.     Plaintiff stopped by Mr. Elsberry's office, several times, to talk to him but Mr. Elsberry was always too busy. After getting agitated, his secretary suggested that Plaintiff schedule an appointment. Plaintiff set an appointment for the first opening in April. This is when Plaintiff found out that the Plaintiff certificate of need was given to a third party without his permission and that they submitted it to obtain a contract with Floyd Medical Center.

55.     Term: Spring 2022, Plaintiff took both EDUC 737 Ethical and Social Responsibility in Technology and EDUC 812 Advanced Education Statistics (*See*, Exhibit 15). These courses were very taxing. Plaintiff had to learn the IBM SPSS[6] (Statistical Program for Social Sciences) software platform for advanced statistical

---

[6]*See* SPSS Quantitative Analysis. (2022).
 https://regaladojesse.wixsite.com/portfolio-9/quantitave (last visited December 10, 2022).

analysis, algorithms, and big-data integration. Therefore, Plaintiff didn't do any more follow-up on the hospital plans.

56.     In August 2022, Plaintiff saw a billboard go up for Floyd Atrium Emergency 24-hour Care Facility beside Walmart Supercenter at 13427 Highway 27, Trion, GA 30753 (property that borders both Trion & Summerville). The plaintiff became agitated because he realized that the defendants decided to move on with the Micro-hospital/Emergency 24-hour Care Facility without paying him. Plaintiff realized that the defendants were using eminent domain (the taking clause) to take the plaintiff's plans, without paying him, violating the 5th Amendment, 4th Amendment, and 14th Amendment of the United States Constitution.

57.     On August 29, 2022, Plaintiff decided to seek criminal action against the mayor of Trion, the mayor of Summerville, the commissioner of Summerville, and the former City manager of Summerville, Janice Galloway. Plaintiff went to the Magistrate Court of Chattooga County and filled out the application for a criminal warrant for the theft of intellectual property. Plaintiff spoke with Judge Maddox about the theft of the plaintiff's intellectual property. The plaintiff realized quickly that Judge Maddox was not going to help him.

58.     Judge Maddox told the Plaintiff that Chattooga County has been trying to get a hospital for twenty years, implying the county had the right to take the plaintiff's plans through immanent domain since the hospital was for public use, then told Plaintiff that he refused to sign the warrants saying the county officials had sovereign immunity and to get a lawyer (*See*, Exhibit 15.2). Although sovereign immunity no longer applies in the State of Georgia. HR 1023, allows the people of Georgia to petition the court for relief from governmental acts done outside the scope of lawful authority or which violate the laws of this state, the Constitution of Georgia, or the Constitution of the United States (HR 1023 covers any act committed after January 2021).

59.     The U.S. Const. Amend V states that "nor shall private property be taken for public use, without just compensation" ("Takings Clause").  The City of Trion, City of Summerville, nor Chattooga County can take the plaintiff's private property for public use regardless of the benefit to society without compensation.  The 5th Amendment requires that due process of law be part of any proceedings that deny its citizen life, liberty, or property and requires the government to compensate citizens when it takes private property for public use (Cedar Point Nursery, 141 S. Ct. at 2071; Horne v. Dep't of Agric., 576 U.S. 350 (2015).

60.    Horne, 576 U.S. at 364–65.  The Court stated with the proposition that a "classic taking [is one]  in which the government directly appropriates private property for its own use," id. at 357, quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan.

61.    In Case of 1:18-cv-01922-ABJ the Court went on to hold that there was nothing in the text or the history of the clause or its own precedents to suggest that the rule would be different in the case of the appropriation of personal property: "[t]he Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." Id. With respect to the dispute before it, the Supreme Court noted that the growers were obligated to physically surrender the actual raisins and that the government assumed possession and control  "as if [it] held full title and ownership." Id. at  362.

62.    Likewise, the Defendants obligated Plaintiff physically surrender the plans for a 24-hour emergency health care facility/ Micro Hospital and allow the government to assume possession and control of the plans for the hospital. The Plaintiff worked hard to come up with these plans for the Defendants to use eminent domain to take possession and control of the plans "as if  [it]  held full title and ownership of the plans" without compensating the Plaintiff for it, violating the 14th Amendment, 4th Amendment, and the 5th Amendment of the United States

Constitution (the taking clause).

63.     On August 29th Plaintiff decided to write the mayor of Trion, the mayor of Summerville, the commissioner of Summerville, and the former City manager of Summerville, Janice Galloway a demand letter asking for compensation for the plans for the hospital (*See,* Exhibit 16; Exhibit 17). Plaintiff sent this letter both via electronic mail and certified mail with a return receipt to Mr. Elsberry (*See,* Exhibit 18) and Mr. Thomas (*See,* Exhibit 19), except for the mayor of Summerville (*See,* Exhibit 20) and City manager of Summerville (*See,* Exhibit 21) (their Demand letter was delivered in person and signed by Caitlin Oden, the notary public/secretary of the mayor and City manager of Summerville).

64.     Plaintiff then reached out to both Mr. Christopher Corbin who represents the town of Trion, GA and Chattooga County, and Mrs. Melissa Hise from Palmour law firm who represents the City of Summerville, GA, and attempted to negotiate fair compensation, to reach a compromise, to save taxpayers litigation costs, and expenses and resolve the issue at hand (*See,* Exhibit 22-1)

65.     The defendant's lawyers went as far as to admit that the defendants were in possession of the plans and stayed firm that the Defendants had every right to exercise eminent domain and take the plaintiff's personal property protected by copyright laws, the Defend Trade Secrets Act of 2016, the Uniform Trade Secrets,

the 5th, 4th, and 14 Amendment of the United States Constitution without proper compensation.

66. And attempted to bully the Plaintiff by saying, "You then, without any prompting from the Town of Trion or its officials, presented this "course work" to the mayor. And now, just because you presented your "course work" to Trion's mayor you somehow believe that you are owed compensation, not only from the Town of Trion, but the County and City of Summerville? Good luck with that!" (*See,* Exhibit 22-2). Although the Plaintiff submitted a clientele report and discussed compensation for the plans for a MICRO-HOSPITAL/24-hour emergency room care facility, and the concert series event on slides 37-38 of the report.

67. Plaintiff wants what is best for Chattooga County. Once the Defendants compensate the Plaintiff for the plans for the MICRO-HOSPITAL/24-hour emergency room care facility, then the plans lawfully become theirs.

## V.     PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs in this complaint,

B. Injunction relief ordering temporary restraining order to stop construction of the Micro-hospital/Emergency 24-hour Care Facility in Chattooga County until this claim is resolved

C. Injunction relief order to cease construction of the Micro-hospital/Emergency 24-hour Care Facility in Chattooga County due to constitutional law violations that are "capable of repetition, yet evading review" because once it has been built it cannot be unbuilt.

D. Grant Plaintiff $200,000 for the Micro-hospital/Emergency 24-hour Care Facility

E. Grant Plaintiff $100,000 for the Concert Series Event

E. Trial by a jury on all triable issues

F. Punitive Damages

G. Granting all other relief as is just and proper to make the Plaintiff whole, including but not limited to attorneys' fees and court costs.

Dec. 29ᵗʰ 2022 (jr)

~~January 3, 2023~~

Respectfully Submitted:
*/s/ Jesse Regalado*
Jesse Regalado

regalado_jesse@yahoo.com
37 Georgia Street
Trion, GA 30753
Pro-Se  (Attorney for Plaintiff)

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rules 26.1-1 through 26.1-3 and 28-1(b) I hereby certify that the following persons and entities may have an interest and the outcome of this case:

Chattooga County, Defendant

City of Summerville, Defendant

Town of Trion, Defendant

Corbin, Christopher (Defendant's Attorney for Town of Trion)

Elsberry, Blake (Commissioner of Summerville)

Galloway, Janice (Former City Manager, Summerville)

Harvey, Harry (Mayor of Summerville)

Hise, Melissa (Defendant's Attorney for the City of Summerville)

Palmour, Albert (Defendant's Attorney for the City of Summerville)

Regalado, Jesse, (Plaintiff, Prose)

Stansell, Larry (Former Mayor of Trion)

Thomas, Lanny (Mayor of Trion)

Atrium Health Floyd Medical Center

No publicly traded company or corporation has an interest in the outcome of the case.

Respectably Submitted:

 _/s/ Jesse Regalado_
Jesse Regalado (Pro-se)
37 Georgia Street
Trion, Georgia 30753
678-891-7439
regalado_jesse@yaho.com

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)

**I HEREBY CERTIFY** that the foregoing Plaintiff's Complaint, Injunction Relief, Demand for Jury Trial, and memorandum of law have been prepared using Times New Roman 14-point font, one of the approved fonts and point selections specified inLR5.1(C), NDGa.

Respectably Submitted:

 */s/ Jesse Regalado*
Jesse Regalado
37 Georgia Street
Trion, Georgia 30753
678-891-7439
regalado_jesse@yaho.com
Attorney for Plaintiff (Prose)

## CERTIFICATE OF SERVICE

Dec. 29th 2022

**I HEREBY CERTIFY** that on ~~January 03, 2023~~, Plaintiff e-mailed a

29th        December

courtesy copy to the defendant's lawyers and that, upon the ~~3rd~~ day of ~~January~~

2022

~~2023~~, the complaint was filed with the Clerk of Court in person and upon receipt of

the summons, the complaint will be filed with the  Deputy Sheriffs of Chattooga

County for delivery to:

Melissa Gifford Hise
Palmour Law Firm
9933 Commerce St.
P.O. Box 716
Summerville GA 30747
Telephone: 706-857-5544
Facsimile: 706-857-4355
mhise@palmourlaw.com

Christopher L. Corbin
Attorney for Town of Trion
and Chattooga County
Farrar & Corbin, P.C.
P.O. Box 736
101 W. Washington Street
Summerville, GA 30747
706-857-3497
706-857-2236 (Fax)
chriscorbin@windstream.net

Respectably Submitted:

*/s/ Jesse Regalado*

Jesse Regalado
37 Georgia Street
Trion, Georgia 30753
678-891-7439
regalado_jesse@yaho.com
Attorney for Plaintiff (prose)